UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUBEN SANCHEZ, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 C 06347 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| LOUIS GARCIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ruben Sanchez was arrested for driving under the influence of alcohol on August 10, 2010. While awaiting trial, Sanchez was housed in the medical wing of the Cook County Department of Corrections. Sanchez has filed this suit under 42 U.S.C. § 1983, alleging several violations of his constitutional rights during his arrest and pretrial detention. R. 69, Third Am. Compl.[1] In Count 4 of his Third Amended Complaint, Sanchez alleges that Cook County, through its affiliate Cermak Health Services, has a policy and practice of being deliberately indifferent to the medical needs of pretrial detainees in violation of the Fourteenth Amendment.[2] *Id.* ¶¶ 41-46. Cermak now moves for summary judgment. R. 127, Mot. Summ. J. For the reasons discussed below, Cermak's motion for summary judgment is granted.

---

[1]This Court has subject-matter jurisdiction under 28 U.S.C. § 1331. Citation to the docket is "R." followed by the docket entry.

[2]Sanchez's deliberate-indifference claims against most of the Cermak medical professionals were dismissed on statute-of-limitations grounds. *See* R. 99, July 2, 2014 Minute Entry. The claims against the remainder of the Cermak medical professionals were dismissed for failure to timely serve. *See* R. 120, Nov. 19, 2014 Minute Entry.

# I. Background

In deciding Cermak's motion for summary judgment, the Court views the evidence in the light most favorable to Sanchez. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). On August 10, 2010, Sanchez was arrested for driving under the influence of alcohol. DSOF ¶ 14.[3] Before the date of his arrest, Sanchez had an abdominal wall reconstruction. *Id.* ¶ 17. As a result, Sanchez suffered from chronic abdominal pain. *Id.* Because of his medical problems, Sanchez was housed in the Cook County Department of Corrections medical wing. *Id.* ¶ 9. Cermak Health Services, an affiliate of Cook County Department of Corrections, provides the health care to all pretrial detainees housed in the medical wing and in the Cook County jail. *Id.* ¶ 3.

When Sanchez arrived at Cook County jail, he told jail intake staff that he had been prescribed Vicodin. PSOF ¶ 10. At the time Sanchez was admitted, the jail's electronic records system was not yet working, so the Cermak physicians could not electronically verify Sanchez's prescription information. DSOF ¶ 18. Sanchez also admitted to intake staff that he had been taking eight to ten Vicodin per week and drinking eight to ten beers per day before he was arrested. *Id.* ¶ 17. Rather than prescribe Sanchez additional Vicodin, the Cermak physicians prescribed

---

[3]Citations to the parties' Local Rule 56.1 Statements of Fact are "DSOF" (for Cermak's Statement of Facts) [R. 130]; "PSOF" (for Sanchez's Statement of Facts) [R. 147]; "Pl.'s Resp. DSOF" (for Sanchez's Response to Cermak's Statement of Facts) [R. 148]; and "Def.'s Resp. PSOF" (for Cermak's Response to Sanchez's Statement of Additional Facts) [R. 155]. Where a fact is admitted, only the asserting party's statement of facts is cited; where an assertion is otherwise challenged, it is so noted.

Sanchez denies DSOF ¶ 14, but his denials concern whether he was arrested for *aggravated* DUI; he does not dispute that he was charged with driving under the influence. *See* Pl.'s Resp. DSOF ¶ 14.

2

Tramadol (the generic version of Ultram) for Sanchez's pain. *Id.* ¶ 22. Unlike Vicodin, Tramadol does not contain acetaminophen, which may cause liver irritation. *Id.* Because there was a question about Sanchez's alcohol abuse (and therefore his liver health), the prescribing doctor reasoned that Tramadol was a good initial choice for pain management. *Id.*

Over the next few months, Sanchez was given several different pain medications. At various times and in various dosages, he received acetaminophen, ibuprofen, and more Tramadol. PSOF ¶¶ 16-17; DSOF ¶¶ 20, 22, 26-28, 30, 33, 40-41. He was not prescribed more Vicodin. Sanchez frequently complained to Cermak staff that the pain medication was ineffective. PSOF ¶¶ 20-25. Despite his complaints, Sanchez alleges that he was given pain medication "on an inconsistent basis," and that he frequently received a lower dose than what had been prescribed. R. 146, Pl.'s Resp. Br. at 5. Sanchez's stomach pain was so severe that he was often unable to eat. DSOF ¶¶ 9-10, 36, 44. During his first four months at the Cook County jail, Sanchez lost 42 pounds. PSOF ¶ 33. Sanchez's weight loss only subsided when he was given a consistent dose of Tramadol in December 2010, and he was not able to gain back the weight until he was released. *Id.* ¶¶ 27, 33, 35; R. 142-1, Def.'s Exh. A, Sanchez Dep. at 304:5-13 (stating that he stopped losing weight in December, once he started receiving twice-daily doses of Tramadol). Sanchez alleges that the failure to adequately treat his pain constituted deliberate indifference to his medical needs in violation of the Fourteenth Amendment. DSOF ¶¶ 11-12.

3

Because the deliberate-indifference claims against the Cermak medical professionals have been dismissed, Sanchez's only remaining claim based on his medical treatment is against Cook County (and its affiliate, Cermak) under *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978). Sanchez alleges that Cook County has a policy or practice of failing to provide adequate pain medication to pretrial detainees, specifically by failing to adequately enforce its medication-continuity policy. Third Am. Compl. ¶¶ 19, 42-45; Pl.'s Resp. Br. at 12-13. This medication-continuity policy arises from a May 2010 consent decree between Cook County and the United States Department of Justice. PSOF ¶ 5.[4] Part of the consent decree required implementing a medication-continuity system "so that incoming inmates' medication for serious medical and mental needs can be obtained in a timely manner, as medically appropriate." *Id.* ¶ 7. The new policy required inmates to be examined by a medical professional shortly after booking, and that the medical professional would determine whether the inmate's pre-incarceration prescriptions should be maintained. *Id.* If the prescription is discontinued or modified, the medical professional must document the reason for the change. *Id.* Although the consent decree took effect in November 2010, R. 147-1, Pl.'s Exh. 4, Consent Decree at 54, it turns out that Cermak did not change its

---

[4]Cermak objects to Sanchez's inclusion of the consent decree in his Statement of Additional Facts because it was not disclosed in discovery. Def.'s Resp. PSOF ¶¶ 5-7. Although ideally Sanchez would have notified Cermak that he planned to rely on the consent decree, his failure to do so was harmless in this case. Cermak was well aware of the consent decree, and the inclusion of the consent decree does not change the resolution of the motion for summary judgment. *See David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (stating that exclusion is not required when a violation of discovery rules is either justified or harmless). Moreover, it is appears that the consent decree was responsive to one of Sanchez's requests for production to Cermak. *See* R. 160, Pl.'s Sur-Reply Br. at 4 n.2.

Medication Services Policy to mirror the language of the consent decree until October 19, 2011 (after Sanchez was discharged), Def.'s Resp. PSOF ¶ 8.

## II. Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court may not weigh conflicting evidence or make credibility determinations, *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011), and must consider only evidence that can "be presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2). The party seeking summary judgment has the initial burden of showing that there is no genuine dispute and that they are entitled to judgment as a matter of law. *Carmichael v. Village of Palatine*, 605 F.3d 451, 460 (7th Cir. 2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). If this burden is met, the adverse party must then "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

### III. Analysis

Under the *Monell* theory of liability, a municipal corporation can be held independently liable for an injury inflicted by its employees or agents if that injury was caused by the execution of the entity's official policy or custom. *Monell*, 436 U.S. at 694. To successfully state a claim for municipal liability, a plaintiff must allege "(1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled as to constitute a custom or usage with the force of law even though it is not authorized by written law or express policy; or (3) an allegation that a person with final policy-making authority caused the constitutional injury." *Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 844 (7th Cir. 2004). A failure to train may constitute an official custom or policy for purposes of § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [government employees] come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388 (1989); *see also Sornberger v. City of Knoxville,* 434 F.3d 1006, 1029 (7th Cir. 2006) ("Establishing *Monell* liability based on evidence of inadequate training or supervision requires proof of 'deliberate indifference' on the part of the local government."). A plaintiff may only state a claim against a municipal corporation—like Cook County—if "an official policy or custom not only caused the constitutional violation, but was 'the moving force' behind it." *Estate of Sims ex rel. Sims v. Cnty. of Bureau,* 506 F.3d 509, 514 (7th Cir.2007) (citing *City of Canton,* 489 U.S. at 389).

Sanchez does not allege that he was injured as a result of an express policy or the actions of a person with final policy-making authority; he claims instead that Cermak (1) has a widespread custom and practice of "not following its written medication continuity procedure regarding the continuation of pre-detention prescription medication"; and (2) has failed to train its staff on the medical continuity procedure in the 2010 consent decree. Pl.'s Resp. Br. at 12-14. Cermak argues that Sanchez's *Monell* claims must fail because—even viewing the evidence in Sanchez's favor—he not only fails to establish the existence of a policy or practice, he also cannot demonstrate that there is an underlying constitutional injury. R. 128, Def.'s Br. at 3-4. A government entity generally cannot be liable under *Monell* unless there is an underlying constitutional violation by one of its employees. *Sallenger v. City of Springfield*, 630 F.3d 499, 504 (7th Cir. 2010). Both parties argue at length about whether the treatment that Cermak medical professionals gave to Sanchez was "so blatantly inappropriate" as to constitute deliberate indifference to his medical needs. *See* Def.'s Br. at 3-10; Pl.'s Br. at 2-11; R. 154, Def.'s Reply Br. at 11-17; *see also Greeno v. Daley,* 414 F.3d 645, 653-54 (7th Cir. 2005) (holding that, although "neither medical malpractice nor a mere disagreement with a doctor's medical judgment amounts to deliberate indifference," there may be a constitutional injury if treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate [an inmate's] condition") (internal quotation marks omitted). Although it does not appear that Sanchez's medical treatment rose to the level of intentional or reckless

mistreatment required for a constitutional violation, it is not necessary to decide the issue because Sanchez has failed to establish that Cermak had a policy or practice that was the moving force behind his injuries.[5]

Government entities cannot be liable for the constitutional wrongs of employees on a *respondeat superior* theory; only the entity's own acts—through policy or custom—can expose it to § 1983 liability. *City of Okla. City v. Tuttle*, 471 U.S. 808, 821-22 (1985). So, for a claim based widespread policy or practice, the fact that a plaintiff suffered a constitutional injury at the hands of a government employee is not enough to establish that the government entity itself is liable for

---

[5]The parties also argue at length about the admissibility of the affidavit of Dr. Jeffrey Coe, which Sanchez submitted in support of his Statement of Additional Facts. *See* R. 147-1, Pl.'s Exh. 8, Coe Aff. Coe was not disclosed as a witness or expert during discovery, and Cermak asks the Court to exclude the affidavit under Federal Rule of Civil Procedure 37(c)(1). Def.'s Reply Br. at 2-6. Although it does not appear that the Coe affidavit bears on the policy-and-practice element of Sanchez's *Monell* claim, to the extent that it does, the Court will not consider it. Rule 26(a)(1) requires parties to disclose, among other things, the names of parties with discoverable information, and Rule 26(a)(2) requires expert disclosures. Sanchez did not disclose Coe as a potential witness during discovery, and only supplemented his Rule 26(a)(1) disclosures the day before his submitted his response to the summary judgment motion. *See* R. 160, Pl.'s Exh. 2, Suppl. Disclosures (dated March 31, 2015); Pl.'s Resp. Br. (dated April 1, 2015); *see also* R. 121, Nov. 11, 2014 Minute Entry (stating that fact discovery was closed as of November 11, 2014 except for examination of sealed evidence).
    Rule 37(c)(1) states that "if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion … unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Sanchez has provided no justification for the omission of Coe, so Sanchez cannot use Coe's affidavit in opposition to summary judgment unless the omission was harmless. Sanchez argues that the omission was harmless because he does not plan to call Coe at trial, so there is no need for Cermak to take Coe's deposition. Pl.'s Sur-Reply Br. at 3. But the omission of Coe is not rendered harmless only because he will not be called at trial. Rule 37(c)(1) prevents parties from using undisclosed evidence "on a motion" as well as at trial unless such omission is harmless. Here, it was not. Had Coe been disclosed before the filing of the summary judgment motion, Cermak would have had the chance to depose him on Coe's assertions. Because the failure to disclose Coe under Rule 26(a)(1) and Rule 26(a)(2) was neither substantially justified nor harmless, his affidavit is excluded under Rule 37(c)(1).

that injury. *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005) (holding that a policy-or-practice claim "requires more evidence than a single incident to establish liability"). There must be some evidence from which the finder of fact could infer the existence of an actual policy attributable to government decisionmakers. *Tuttle*, 471 U.S. at 821-22.

Here, Sanchez fails to present any evidence apart from the wrong done to him, and him alone, to support his assertion that Cermak had a practice or informal policy of ignoring its written medication-continuity program set forth in the consent decree. Sanchez's reliance on the testimony of a Cermak medical professional, Dr. Nagib Ali, does not support the existence of such a policy. Ali testified that there were certain situations in which pretrial detainees would not be given narcotics—for example, detainees who came in with a history of heroin abuse. R. 131, Def.'s Exh. F, Ali Dep. at 14:11-15:10. If a detainee who came into the jail had been taking Vicodin already, Ali testified that, "[i]n some situation[s]" the inmate would continue that medication, but the practice would be to "refer [the inmate] to the Pain Clinic at Stroger [Hospital] and … follow the recommendation." *Id.* at 15:11-17. The consent decree only requires that qualified medical or mental health professional evaluate the inmate to determine if the prescribed medication should be continued or changed. *See* Pl.'s Exh. 4, Consent Decree at 26-27; *see also id.* at 4 (defining qualified medical professional as "a licensed physician, licensed physician assistant, or a licensed nurse practitioner"). Sanchez presents no evidence that a

referral to the Pain Clinic at Stroger would not meet this requirement.[6] Nor is the existence of the consent decree itself evidence of a policy. Sanchez argues that Cermak's policy is to ignore the consent decree. Pl.'s Resp. Br. at 12. To suggest that the existence of the consent decree somehow supports an inference that Cermak ignores that same consent decree is circular.[7] Sanchez points to no other inmates who were injured by a failure to abide by the medication-continuity policy or other any evidence that the alleged practice was widespread. The only evidence that Cermak failed to abide by the medication-continuity policy, therefore, is the harm allegedly done to Sanchez. A single instance is insufficient to establish the existence of a widespread policy or practice, and Sanchez's *Monell* claim fails. *Calhoun*, 408 F.3d at 380.

Sanchez's allegations that Cermak failed to train its staff on the medication-continuity policy fare no better. "Establishing *Monell* liability based on evidence of

---

[6]In Sanchez's response to Cermak's Statement of Facts, there is a hint of an argument that Cermak had a policy of not prescribing narcotics to inmates. *See* Pl.'s Resp. DSOF ¶¶ 45, 47-48. A Local Rule 56.1 statement is not the proper place to make legal arguments, *see Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 n.2 (7th Cir. 2008), and Sanchez does not raise this argument in his response brief. The argument is therefore waived. *See Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."). But even if it were not waived, Sanchez has not presented any admissible evidence to controvert Cermak's evidence that there is no such policy. Sanchez's deposition testimony that states that "[t]hey're telling me that that's all that they can do because they don't give hydrocodone to the inmates" lacks sufficient foundation as to the "who, where, and when" of the alleged conversation. Def.'s Exh. A, Sanchez Dep. at 315:12-23.

[7]Even if Sanchez had alleged a policy of a failing to adequately provide for continuity of prescription medication that *necessitated* the consent decree (assuming such policy would be the moving force behind Sanchez's injuries), the mere existence of the consent decree would not be evidence of such a policy. In the consent decree, Cook County expressly denies any wrongdoing, and there are no facts in the consent decree to suggest that there had been a widespread policy of failing to adequately provide for continuation of prescription medication. *See* Pl.'s Exh. 4, Consent Decree at 55-56.

10

inadequate training or supervision requires proof of 'deliberate indifference' on the part of the local government." *Sornberger*, 434 F.3d at 1029. Like policy-and-practice claims, allegations of a failure to train typically require "[a] pattern of similar constitutional violations by untrained employees … to demonstrate deliberate indifference." *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011). The pattern of constitutional violations serves to establish that decisionmakers knew or should have known that the training was inadequate and nevertheless disregarded the consequences. *Id.* As discussed above, the only evidence of a failure to abide by the medication-continuity procedure was Sanchez's own injury.

"[I]n a narrow range of circumstances," however, "a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 1361 (internal quotation marks and citation omitted). A single instance is sufficient where constitutional injury is a "highly predictable consequence" of the failure to train. *Id.* For example, deliberate indifference could be inferred from a single instance where "a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Id.* (citing *City of Canton*, 489 U.S. at 390 n.10). To satisfy this standard, the likelihood of constitutional injury must be "so predictable that failing to train [the government employees] amounted to *conscious disregard* for defendants' … rights." *Id.* at 1365.

Given the undisputed existence of other medical treatment available at Cermak, it is unlikely that a failure to adequately train on the medication-

continuity plan would inevitably lead to deliberate indifference to the medical needs of the detainees in violation of the Fourteenth Amendment. Unlike sending untrained, armed police officers into the community, a failure to train on a medication-continuity policy does not appear to fall into the "narrow range of circumstances" that does not require a pattern of conduct to establish a conscious disregard for citizens' rights. The Court need not decide that issue, however, because Sanchez provides no evidence on what training procedures Cermak uses, let alone anything that would suggest that constitutional injury is the "highly predictable consequence" of these training procedures. Without any evidence as to what training policies are in place, there is no basis for a reasonable factfinder to infer "that such training, supervision, and discipline are so obviously inadequate as to result in the violation of constitutional rights." *Young v. Village of Romeoville*, 2011 WL 1575512, at *4 (N.D. Ill. Apr. 27, 2011) (citing *Edwards v. Two Unknown Male Chicago Police* Officers, 623 F. Supp. 2d 940, 952 (N.D. Ill. 2009)); *see also Palmer v. Marion Cnty.*, 327 F.3d 588, 597 (7th Cir. 2003) (affirming summary judgment on a failure-to-train claim when the plaintiff "did not present so much as a scintilla of evidence that the defendants improperly hired, trained, or supervised" its staff). Because Sanchez has failed to set forth any facts from which a reasonable jury could infer inadequate training of Cermak medical staff on the medication-continuity policy, *see Anderson*, 477 U.S. at 256, Cermak's motion for summary judgment on the *Monell* claim is granted.

## IV. Conclusion

For the reasons discussed above, Cermak's motion for summary judgment as to Sanchez's *Monell* claim alleging a policy that resulted in deliberate indifference to his medical needs is granted.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: May 4, 2015